and 14-4074 Abercrombie and Fitch Company v. Ace European Group Limited Oral argument, 15 minutes per side. Ms. Murphy-Petros for the appellate. Good morning, Your Honors. Melissa Murphy-Petros for the appellate.   Ms. Murphy-Petros for the appellate. And I reserves three minutes for rebuttal. First, the promotional gift cards are coupons for purposes of the policy's coupons and second, they are contracts for purposes of the policy's breach of contract exclusion. And third, we look specifically that coverage is precluded for any damages or claim expenses which directly or indirectly arise out of or are attributable to coupons. Here, the policy does not define the term coupon, so under Ohio law we look to see if it has a natural and commonly accepted meaning. If so, that meaning must control. And here, as we have set out in our brief, Merriam-Webster's Dictionary provides us with the natural and commonly accepted meaning of the term coupon. Which is anything used to obtain a discount on something. Here, the promotional gift cards fall squarely within this definition. They are documents entitling the holder to a discount on the purchase of Abercrombie merchandise. They were not sold by Abercrombie for any consideration, but were given freely to customers who purchased a qualifying amount of merchandise. They were not used by customers in any way different than a coupon you would clip out of a newspaper or magazine. There are other ways of viewing these so-called gift certificates than as coupon under that one particular definition from I believe it's an online student dictionary? No. The only way that we can interpret these promotional gift cards is as coupons. They again allow one to get a discount on something. And this is also discussed in the opinion of Judge Posner that we discussed Redmond versus Radio Shack. But in this case, even Abercrombie itself on its website treats these as different than a traditional gift card which one purchases for consideration. These have expiration dates. They are good for a limited time. I thought that was the whole issue. I thought that the underlying case was that Abercrombie had not put on expiration dates on half of these or some fraction of these and on others had written no expiration dates. So I'm a little bit confused by your description. I apologize for the interruption. Yes, the expiration date certainly is what gave rise to all of the underlying actions. Abercrombie programmed these cards to have an expiration date of January 30, 2010. They state that they informed consumers of this in decorative sleeves that the cards were handed out in as well as in signage and through employees instructing employees to tell consumers of this expiration date. It is true they didn't print the expiration date on the cards and some cards did in fact say no expiration date. Regardless though, it is undisputed that they had an expiration date like all coupons and that was January 30, 2010 when in fact they did all expire, thus leading to... But the consumer fraud claim is I think grounded on the feature that the consumer who received the card, arguably in exchange for the card's expiration date, had to go through the sales contract of whatever they purchased. There has to be an underlying purchase, right? In order to obtain the gift card. So was the gift card itself a contract? Can you actually argue that, that it's a contract rather than the consideration for the contract of sale of the goods? Yes. The gift card was a contract for purposes of the policy's breach of contract exclusion. I know you say that. I'm asking you, does that truly fit? Yes, we believe that it does truly fit as we discussed in our brief. When in consideration for a purchase of $75 or $100 worth of merchandise during a certain period of time at the Christmas 2009 shopping season, in addition to the merchandise, the customer was given a promotional gift card for $25 off a future purpose. Is that a contract? I think you're saying that itself is a contract, so let's examine that. How can that be the contract? The contract is that in consideration for purchasing a set amount of merchandise. Every contract, there's consideration as part of it, there's the underlying. Can it be the contract and the consideration? I'm not sure I understand your question. What's the contract, the agreement? You say the coupon itself or the gift card itself is a contract. Between whom? Between Abercrombie and the purchaser. What does it promise? It promises that if I purchase $75 of merchandise today, which I did, I will get my merchandise and I will also receive a promotional gift card for $25 off a future purchase of merchandise. I can't get that promotional gift card any other way because they're not traditional gift cards that you would go and purchase. Other than the sales? I can't get that promotional gift card any other way because they're not traditional gift cards that you would go and purchase. You're claiming that the gift card constitutes a separate contract between Abercrombie and the customer and that therefore any liability that your insurance company has is excluded from coverage because of one of the exclusions in the contract. That is correct. And in fact, in one of the underlying actions, the boundless action, which is currently pending in the Northern District of Illinois, that court has already found that these promotional gift cards are coupons. That court dismissed the consumer fraud claims with prejudice and certified a class to go forward only on a breach of contract claim, finding that these are in fact contracts. What did this district court that we're reviewing say about your contract exclusion claim? This district court, in the initial opinion, the first opinion of September 2013, acknowledged that looking at what the boundless court had done, that these are contracts and that there would not be indemnity for any breach of contract claim, for any judgment or settlement that would arise out of a breach of contract claim. So as Judge Cook pointed out, there is the consumer fraud claim that would remain. Yes. And this district court found that the duty to defend continued in boundless despite the dismissal of the consumer fraud claims, which are arguably covered under the policy, because it was a mixed action at the beginning which caused the duty to defend to incept in the first place. But certainly this district court has recognized that all contract claims are excluded from coverage and that there will be no indemnity here, at least with respect to the boundless case, because there's nothing left there other than breach of contract. For some reason I thought that the district court in this case had felt that you had not raised certain arguments against coverage in a timely way. Am I misremembering this? The district court in its second decision was referring to our argument with respect to the coupon exclusion, as opposed to the breach of contract. The coupon exclusion has been at play in this case really from the beginning since coverage correspondence was issued. We did raise a slightly more nuanced argument in a motion to reconsider before the district court, and that was what the district court was referring to in the second decision when referring to timeliness. You're saying that with respect to the breach of contract, with respect to the coverage issue, that the district court ruled in your favor saying that the exclusion, which I believe is subsection H, applies to this case? Yes, that it applies. The district court found that it applies to indemnity. Of course we argue that it applies also to the duty to defend, because the exclusion specifically states that it precludes coverage for any damages or claim expenses. Claim expenses are defined in the policy as defense costs incurred in the underlying action. So the exclusions in this policy apply to the duty to defend separately and apart from the established principle that where there's no duty to indemnify, there's no duty to defend. Our position is the district court's correct. The breach of contract exclusion does preclude indemnity for the underlying actions, but also that it precludes coverage for a duty to defend based on the language of the exclusions themselves. If your honors have no further questions, I will rest on my briefs at this point. Thank you. May it please the court. My name is Alicia Brose of the law firm Avori, Sater, Seymour & Pease, and I represent Abercrombie & Fitch in this matter. There are three issues that I would like to address before the court today. First, Abercrombie is entitled to coverage under the policy for the three underlying consumer fraud class actions. Second, the exclusions cited by Ace do not remove Abercrombie's coverage. And third, based upon this court's 2006 decision of City of Sandusky, Abercrombie is entitled to a defense and bound us through final judgment. Turning to my... Defense and what? And bound us the underlying class action in the Northern District of Illinois. First, Abercrombie is entitled to a defense under the policy. And may I correct my opposing counsel, the district court did not decide whether Abercrombie was entitled to indemnification and bound us. I refer you to page ID 2199 of the district court's opinion, where the district court expressly stated that it was relieving resolution of the indemnification question for a later day. That is the only issue that was before the district court was whether Abercrombie was entitled to a defense for the three underlying consumer fraud class actions. Applying Ohio law, which the parties agree applies in this matter, to determine whether there is defense as opposed to a duty to indemnify, this court is to look at the policy and the underlying complaints. A duty to defend exists if the claim arguably or potentially falls within the policy. The district court applying this analysis properly found that Abercrombie was entitled to a defense for the three underlying consumer fraud class actions. The first case, bound us, pleads a claim for a violation of the Ohio consumer fraud class actions. In white, there's a cause of action for the California consumer fraud statute. And in CBER, it alleges a violation of the Ohio Consumer Sales Practices Act. Thus, each of the three underlying class actions plead a cover claim and Abercrombie is entitled to a defense. Why doesn't it fall within the contract exclusion as argued here? So what Ace argued in the underlying matter is that both... Say that's the contract. Excuse me? The argument here is that the gift card is indeed the contract and therefore it's excluded. Yes, Your Honor. What Ace argued was that all of the claims that were brought in the underlying class action should be subsumed under the contract claim, but that's not correct. The claims are both factually and legally distinct. They are legally distinct because a breach of a contract claim is not... Where does the coverage come from? The coverage comes from paragraph J of the endorsement of the policy that provides coverage for consumer fraud cases. It's the consumer fraud that... That's correct, Your Honor. That's the hook. That's the right place to hang it for your purposes. Exactly, Your Honor. That's the hook for coverage. Even though there are claims that are outside that, your argument is that once... Under Sharonville, once you're required to defend some of the claims there, you buy them all. That's exactly right, Your Honor. Under Sharonville, once you're required to defend one of the claims in the case, you're required to defend the entire case. I'm just curious on this breach of contract. Do you concede that the gift card arrangement is a contract between Abercrombie and the consumer that would be excluded under this exclusion H that I found in the ACE insurance policy? It may be excluded if that were the only claim pled in the underlying case, but because there was a claim pled that had coverage... That had coverage, which is the fraud claim. Are you conceding or are you not conceding that a breach of contract claim, if that were the only claim that were raised by the consumer, would be excluded under H? Yes, we do concede that point. In fact, Your Honor, there was a... And that the gift card is a contract? It hasn't been decided. There is a New Jersey case that was brought against Abercrombie that was purely a breach of contract case, and Abercrombie did not seek coverage for that case. The only reason they believe, and correctly may I add, that they are entitled to coverage is because there are consumer fraud claims in each of the underlying class actions. Turning to the second exclusion cited by ACE, the coupon exclusion, ACE claims that a gift card is a coupon, and in support of this, they rely on several dictionary definitions of coupon that they are found on the Internet. If I urge you, I urge this Court to go to those Internet sites and to look at those definitions. ACE claims that the definition in those sites is that a coupon is a discount on the price of something, or a discount off a particular project. If you actually go to Merriam-Webster's.com, or if you actually go to WordCentral.com, the entire definition of coupon is as follows. And that is a part of an advertisement to be cut off to obtain a discount on the price of something. ACE omits the salient part of that definition, which is a part of an advertisement to be cut off. There was no advertisement coupon cut off in this matter. Are you saying that it wouldn't be a coupon if it was a separate piece of paper that came in the mailing? According to the definition cited by ACE, it would not. Moreover, exclusions are to be read narrowly and in favor of coverage. When you finished that, I thought that your argument was this was forfeited by not having been raised earlier. That is our secondary argument, that this was waived because this argument was not brought up until a motion for reconsideration in the District Court. You're saying that the coupon must be part of a separate advertisement, and you have to use the scissors to obtain it? Not scissors per se, but they definitely have to be part of an advertisement according to the definitions cited by ACE and the dictionary definitions that they support for the definition of coupon. Gift cards are distinct from coupons. I just want to make clear that you can't have a freestanding coupon. That was my question earlier, but you didn't have a chance to fully answer, so please answer Judge Cohn's question. You could have a freestanding coupon, but certainly the promotional gift cards that Abercrombie gave to its customers were not coupons, they were gift cards. We're talking about functionally. Functionally. Analogously. If there is such a word, analogously. I don't know if I can take judicial notice, but I walk into a delicatessen or restaurant and they've got a little pad of these things that you tear off a $10 offer for some other company, and you tear it off. It's gratuitous, you get a reward for it, you get some credit for it. Isn't that functionally equivalent to a gift card? But when interpreting a contract exclusion under Ohio law, you're supposed to interpret the term contract narrowly. Certainly, we could think of a multitude of incidents that cause discounts on the price of something purchased, including have a relationship with a sales clerk. But that doesn't mean my relationship with a sales clerk, which gives me a discount, is a coupon. Under Ohio law, exclusions are to be read narrowly and in favor of the insured. And if there is a separate definition or a different way of defining something, the most narrow definition should be interpreted. And certainly, gift cards are separate from coupons. Gift cards are a form of tender. They're a form of payment that you can walk into a store and purchase something with. You can't just walk into a store and purchase something with a coupon. It actually requires an additional type of tender before you can complete that purchase. Gift cards, as ACE is well aware, are heavily regulated by both the state and the federal government. If ACE wanted the word gift card to be included in their policy, they could have used the word gift card. And by not doing so, it is not within the auspices of the coverage exclusion. But the policy language is coupons, price discounts, prizes, awards, or any other valuable consideration given in excess of the total contracted or expected amount. You say gift cards don't come within that? That is correct, Your Honor. Pardon? That is correct, Your Honor. What this exclusion is meant to be, if I may take a step aside right now, is there is a separate policy that ACE sells that you can buy for a prize or a discount. For example, you go to golf, and if you hit a hole-in-one, you get a card. And you win a card. So ACE decides a separate policy that if you get that hole-in-one, which is unlikely, that they will pay for that card. So this is an exclusion. It's called an over-redemption exclusion. So if the amount of coupons that are issued are over-redeemed, a merchant can buy coverage to protect them from this eventuality of having too much to pay out that they didn't expect. But certainly, if they wanted gift card to be in that, they are well aware of gift cards. But why isn't gift card any other valuable consideration given in excess of the total contracted or expected amount? Because at the time of the purchase, the customer expected to receive that gift card if they paid over $100. It was not in excess of what was expected at the time of the transaction. They got the gift card if they paid $100, and therefore it was entirely expected when the purchase was made. If we looked at the universe of all these kinds of insurance policies, would we find one that specifically included as an exclusion the words gift cards? I'm not purview to all the insurance policies that have been issued. I honestly have not taken a survey, so I apologize, but I cannot answer that question. Have you run across any policies in your experience that do list gift cards? I have not run across any policies that specifically list gift cards. But ACE was well aware of gift cards. They're heavily regulated, and if they wanted to exclude them from the policy, they were certainly entitled to do that. They had the power of the pen. And going back to Ohio law, where exclusions are supposed to be read narrowly... Well, you know, as you think about it, there are gift cards. I can go to Abercrombie and buy a gift card and send it to my grandson for a confirmation gift. So when he goes in, instead of letting him make the choice... But that's not the kind of card that was here. Abercrombie, you sent these out gratuitously. They were not sent out gratuitously. They were only given to a customer upon the purchase of more than $100. These are what are known as promotional gift cards that merchants use. For example, if I have a rewards card at a store and I spend a certain dollar amount, they'll send out a promotional gift card. And I will grant you that promotional gift cards are different than gift cards, but they're still not coupons. So I'm just curious, did Abercrombie give this gift card to the consumer when the consumer bought the $100 of shirts? Exactly, right at the time of sale. Exactly at the time of sale as part of the transaction. Therefore, exclusion O, when we're applying Ohio law, that the insurer bears the burden of demonstrating the applicability of the exclusion, and if this is the only interpretation of coupon that can be decided, does the exclusion apply? And since there are many more interpretations of what includes a gift card and what includes a coupon, including the very dictionary definitions that ACE cites, is that it must be a part of an advertisement that's to be cut off to include a coupon. Exclusion O does not apply. Do you have a competing dictionary definition that you would like us to use for what a coupon is? I'm quite satisfied with ACE's dictionary definition because the part of the advertisement to be cut off, which is cited by ACE, is not what the gift cards were that were provided to the customer at the time of sale. Let me ask you a question out of ignorance. Is a facsimile of the card in the record? A facsimile. I believe it is, Your Honor. I don't have the page site, but I believe it's attached to the complaint. I don't have a page site for you, though. But they look like credit cards. Not in any of the briefs. Would you be good enough to send to the clerk a facsimile of the card, please? I think there may be one on page ID 539. I could be wrong. It's just a small piece of plastic about the size of a credit card that says Abercrombie & Fitch on it. There is one, but it's not readable. Okay, we will get you a readable copy, Your Honor. So you send a readable one? I would be happy to, Your Honor. And as Judge Cook properly pointed out, we believe that ACE waived this coupon argument by not making it before the district court until the motion for reconsideration. Didn't they have some language in their original motion that touched on coupon? They did not, Your Honor. They touched upon Exclusion O, but they never argued until the motion for reconsideration that a gift card is in fact a coupon. They forfeited it? They forfeited it, yes, Your Honor. For both of these reasons, Exclusion O should not be applied to deny Abercrombie coverage. That's the argument, right? You said that's the argument, that it's forfeited, not waived. Yes, Your Honor. Turning to my final point, ACE's duty to defend and bound us, the underlying consumer fraud class action before the Northern District of Illinois, should extend through final judgment. As this court properly found, and as Your Honor properly found prior, in City of Sandusky v. Corgis, the duty to defend should extend through final judgment. And this court found that we should look to the language of the contract to determine when the duty of defense ends. And under the policy here, the duty to defend only ends when the limits of a liability have been exhausted. Since ACE hasn't paid Abercrombie a dime, we ask this court to rule that the duty to defend extends until the final judgment and bound us. For all these reasons, we ask and urge that the court affirm the decision of the District Court. Thank you. Counsel, is it clear that this card is given the customer only in conjunction with a purchase in excess of $100? Yes. $75 or $100 was the promotion, depending on the store. There are three different stores in the Abercrombie family. So in effect, when I bought something for $100, I got this card, so actually I was getting a credit towards my next purchase of $50. Yes, you were getting the card to be used to obtain a discount on your next purchase. That's correct. A credit on my next purchase. I'm not sure how you're using the word credit, but certainly, as we discussed in our brief, if you look at Abercrombie's website, only about 5% of all their products can be purchased for $25 or less. So in all likelihood, your purchase would exceed the $25 amount of the promotional gift card, and you would receive $25 off your total purchase price, whatever that is. Was it $25? $25, yes. I get a discount on my next purchase for credit. I guess I'm not clear in how you're using the term credit. I add up my next purchase, and if it's $200, then there'd be a line credit, $25, so I'd only have to pay $175. Exactly, $25 off your total. I would like to clarify the record on a few points that were raised by the panel with opposing counsel. Abercrombie argues that the gift cards don't have to be one or the other. Why do they have to be one or the other? Well, counsel hasn't told us what a promotional gift card would be otherwise. If it's a traditional gift card, as Judge Cohn pointed out in his illustration, you go to a store, I could go to Starbucks, give them $25, they give me a gift card, I give it to my brother for his birthday. The policy doesn't say anything about gift cards, whether they're promotional gift cards or any other kind of gift cards. It's just silent on gift cards, so it doesn't exclude them, any kind of gift cards. To the extent that gift cards are not listed, again, we have to look at traditional gift cards, as Judge Cohn's example. Those are heavily regulated, and that's not what this is. This is an insurance policy, and whether something is regulated by the federal government or by some state is really immaterial to whether your insurance policy covers Abercrombie. I would like you to respond to that. I realize that I didn't ask it as a question. That is correct, but again, these are not traditional gift cards. They are coupons. They call them promotional gift cards, but I think we have to look at functionality. If it walks like a duck and talks like a duck, it's probably a duck. As Judge Posner discussed in the RadioShack case, which we cited in our brief, you can call them postcards or vouchers or gift cards or whatever you want. The reality is, if the function is going to give you a discount on the price of a purchase of a good or service, it is a coupon, and that's what this is here. I think that's your opponent's argument, that the definition that you picked out said a coupon is something that can be cut off of an ad. Well, I think that's one type of a coupon. In my experience, I use many coupons, as I'm sure we all do when we shop, and they're not all cut with scissors out of an ad. They could be at the delicatessen. They could be handed out. They could come in the mail. I mean, who knows? I think that is a type of a coupon. Again, we have to look at functionality, and functionality is not whether I cut it off something with a pair of scissors. What does this document do for me at the end of the day? Do you know whether, in the insurance company, who physically writes the policies, the draftsperson? You know, I'm sorry, I can't answer that question. So you don't know whether in the universe of insurance policies of this ilk, the word gift cards appears in any of them. This language has to have an origin someplace. Have you ever traced the origin of the exclusionary language in this policy, under the sub O, to know where it came from, how it was developed, whether there are iterations of it? It would seem to me, if you're really trying to include gift cards in that sentence, you would have really gone back to the actual underwriter, the one that writes the scrivener, you know, the one that's sitting on a desk with what they used to call them on your arms, you know, and sits there and has a big book of phrases that he or she can include and see what the origins of this coupon exclusion and whether some places it does say coupons, it does say gift cards. I mean, if that's what you're really doing, I would think you would go back to the first policy that ever had this kind of exclusionary language to see how it's been interpreted historically, where it comes from. Certainly. I think that would be, if this case had come up on motion for summary judgment, we did not do that here, we're here for this case before this court as a partial judgment on the pleadings. So we're looking only at the pleadings, which do include the policy as an exhibit, but not looking beyond the policy to the underwriter's intent. I have not done that research that your honor is referencing. You'd have to, because you came in and you said, we covered these risks, this is a risk we don't cover because of this language. And we interpret this language to mean that a gift card is a functional equivalent of a coupon. They're synonymous. Now, if they are synonymous, it's one thing, but if they're not, if we find that way back in the history of writing policies, I would think you would want to do that. If you want to rely on that exclusion. Well, I think in this case, respectfully, it is very clear that these promotional gift cards, they are not traditional gift cards, that would be a whole other entity. They are coupons. It's a fancy word for coupon, and Abercrombie is an exclusive score. I don't know that it's a fancy word for coupon until you give me the origin. What's it? You're getting us into fascinating issues, but I think that her red light is on. So my red light's on too, right? My red light just got turned off. Given that this is a judgment on the pleadings, we look at the pleadings and we look at the attachments to the complaint and try to decide on the basis of that. And we have taken both of you into interesting areas, and the case will be submitted. We thank you both for your argument. And the court will take a brief recess.